IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| WILLIAM OSCAR WARD,<br><br>      **Plaintiff,**<br><br>      v.<br><br>WESLEY MEDICAL CENTER, LLC<br>and HCA HEALTHCARE, INC.,<br><br>      **Defendants.** | Case No. 6:23-cv-01091-HLT |

**MEMORANDUM AND ORDER**

This is an employment dispute between Plaintiff William Oscar Ward and his former employer, Defendant Wesley Medical Center, LLC. The triggering event seems to be Plaintiff's invention of a workplace tool to clean sprinkler heads. Plaintiff alleges that others tried to steal credit for his invention.[1] Plaintiff's ensuing treatment exacerbated his anxiety. Plaintiff took medical leave approved under the Family and Medical Leave Act (FMLA) and never returned to the workplace.

Plaintiff filed this action pro se[2] against his former employer (Wesley) and Wesley's holding company (HCA Healthcare, Inc.).[3] He asserts claims for disability-based harassment and retaliation. He also asserts a claim under the FMLA for retaliation and "enforcement."

---

[1] Plaintiff indicates that he wants to preserve any claim for misappropriation of intellectual property and conversion in a separate legal action. Doc. 157 at 45. Patent law is beyond the scope of this Memorandum and Order.

[2] The Court liberally construes Plaintiff's pro se filings and holds them to a less stringent standard than those drafted by lawyers. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). But the Court does not assume the role of advocate. *Id*.

[3] This Memorandum and Order often refers to Wesley as the defendant, although both Wesley and HCA are named. Plaintiff extensively argues that HCA is responsible for any adverse action taken against him. The nature of the entities' relationship also seems to be at the heart of discovery disputes in the case. *See, e.g.*, Docs. 131, 157 at 45-47. Nevertheless, the Court does not need to address the entities' relationship because no reasonable jury could find for Plaintiff on his claims.

The parties filed cross-motions for summary judgment. Docs. 156, 157. The Court grants Defendants' motion and denies Plaintiff's motion because no reasonable jury could find a causal connection between Plaintiff's anxiety or protected medical leave and a hostile work environment or his termination. There are other problems with Plaintiff's claims, but the lack of a causal connection is one dispositive flaw that impacts everything.

I.  BACKGROUND[4]

Wesley hired Plaintiff as a Maintenance Mechanic in March 2020. Wesley is a hospital in Wichita, Kansas. HCA is a holding company. Its affiliates own and operate hospitals, including Wesley.

Lisa Clark was Wesley's Vice President of Human Resources. Brian Leabo was the Director of Facilities Management. Darrell Boger was a Refrigeration Tech.

Plaintiff claims that he invented a device to clean sprinkler heads at work. But he believes that Leabo and Boger failed to recognize his invention or give him proper credit. Plaintiff filed a series of complaints relating to this dispute in March 2021:

- March 17, 2021: Plaintiff complained to Wesley's Human Resources Business Partner Amanda Miller that another employee was trying to take credit for his invention.

- March 22, 2021: Plaintiff made a similar complaint to Clark.

- March 19 and 25, 2021: Plaintiff complained to Leabo's supervisor, Shane Wanner, about another employee trying to steal credit for his invention.

---

[4] A court views each motion separately in a light most favorable to the non-moving party when parties file cross-motions for summary judgment. *United States v. Sup. Ct. of N.M.*, 839 F.3d 888, 906-07 (10th Cir. 2016). With this standard in mind, the following facts are uncontroverted. Plaintiff failed to properly controvert any of Defendants' proposed facts. He was instructed how to do so via the required notice filed by Defendants when they filed their summary-judgment motion. Doc. 159. Defendants' facts are deemed admitted. And Plaintiff failed to properly support any of his own proposed facts (other than those stipulated in the pretrial order) until the reply brief to his own motion. The Court addresses the impact of Plaintiff's omissions in Section III.B. of this Memorandum and Order. Needless to say, the stipulated facts in the pretrial order are not enough to carry his summary-judgment burden for his claims.

- <u>March 31, 2021</u>: Plaintiff called two Ethics & Compliance Case Managers to report the same thing about his invention. Wesley investigated but could not substantiate improper conduct.

Plaintiff also alleges that someone tampered with his belongings in late March/early April 2021, when his manager cut the lock off Plaintiff's personal cabinet.

Plaintiff first sought medical care for anxiety on April 15, 2021. He contacted Wesley's third-party leave administrator Time Away From Work (TAFW) on April 19, 2021.

Plaintiff requested leave from April 12 through April 20. TAFW approved the request. Plaintiff then requested and received an extension of leave through May 2. Plaintiff's provider stated Plaintiff was able to return to work on May 3. But Plaintiff did not return on May 3. Clark emailed Plaintiff on May 5 and requested that he report to Human Resources for a meeting. Clark emailed Plaintiff again on May 7, requesting that he meet with her at 7:00 a.m. on May 10. She stated that failure to report to this meeting would be considered separation of employment. Plaintiff responded that same day, advising Clark that his new return-to-work date was May 24. Also on May 7, Plaintiff's therapist submitted documents to TAFW in support of Plaintiff's leave request from April 22 through May 23. TAFW received documentation dated May 7 on May 10, requesting a new return-to-work date of May 24.

Clark emailed Plaintiff again on May 12 to advise him that she had not received documentation supporting leave beyond May 3.[5] She requested that Plaintiff meet with her on May 14, stating:

> I am giving you one final opportunity to report for a meeting with me, Brian, and Jeff to discuss the events of April. Your early departure is not the only topic we need to cover. Please report to

---

[5] Plaintiff suggests that company policy imposed no obligation on him to respond to Clark about his leave. Regardless of whether Plaintiff should have communicated with Clark, Plaintiff presents no evidence that he communicated with <u>anyone</u> other than TAFW about when or whether he would return to work. He also presents no evidence that TAFW was solely responsible for communicating with Clark about Plaintiff's leave status.

> Human Resources on May 14, 2021, at 7:00 a.m. Failure to report to this meeting will result in your termination.

Doc. 144 at 4. Plaintiff did not meet with Clark on May 14. Clark did not communicate further with Plaintiff until July 7. She emailed Plaintiff's supervisors on June 18 to advise them that Plaintiff would likely remain on protected leave until July 5, when he would exhaust his FMLA leave. No one at Wesley told Plaintiff that his employment was terminated before July 15, 2021.

Plaintiff continued to communicate with TAFW about his requested leave extension through the month of May 2021. Plaintiff told TAFW on May 24 that his therapist was completing a new form covering the extension from May 3 through May 24. Plaintiff's therapist advised TAFW that she was only certifying Plaintiff for FMLA leave, and that she did not sign off on Plaintiff's short-term disability paperwork. TAFW approved Plaintiff's leave extension on May 26. TAFW advised Plaintiff in its letter approving the leave, "If your leave request is for your serious health condition and you would like to discuss an accommodation in addition to this request for leave, please contact your facility's Human Resource department as soon as possible." Doc. 156-10 at 3. Plaintiff did not contact Human Resources or return to work on May 24 or after. Plaintiff ultimately received all the FMLA leave he requested (and more).

Clark emailed Plaintiff on July 7, which was twelve weeks after Plaintiff began his leave. She instructed him to contact her by July 12 to discuss his employment. Clark also told Plaintiff that she would move forward with administratively separating Plaintiff's employment if she did not hear from him. Plaintiff did not contact Clark. Clark emailed the HR Liaison for TAFW stating, "Can you confirm that William Ward has not reached out or created another claim? We are looking at terminating him since he is no longer on a protected leave." Doc. 144 at 4. Clark terminated Plaintiff's employment effective July 15, 2021, for job abandonment. She advised Plaintiff of his termination by email.

## II.  STANDARD

Summary judgment is appropriate if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant to demonstrate that genuine issues remain for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Courts applying this standard view the facts and any reasonable inferences in a light most favorable to the non-moving party. *Henderson v. Inter-Chem Coal Co.*, 41 F.3d 567, 569 (10th Cir. 1994). "An issue of material fact is genuine if a reasonable jury could return a verdict for the nonmoving party." *Id.* (internal quotation and citation omitted).

## III.  PRELIMINARY MATTERS

The Court addresses several preliminary matters before turning to the merits. First, the claims identified in the pretrial order are not the same claims Plaintiff briefs on summary judgment. Second, Plaintiff failed to follow the federal rules and the District of Kansas local rules when briefing. Third, Plaintiff requests leave to file a surreply but does not show why one is necessary.

### A.  Scope of Claims

The first matter is the scope of Plaintiff's claims. Plaintiff identifies four claims in the pretrial order:

> i. Count I: Disability Discrimination – Plaintiff was harassed based upon his disability or medical condition.
> ii. Count II: Disability Retaliation – Plaintiff's employment was adversely impacted based upon his disability or medical condition.
> iii. Count III: FMLA Enforcement – Plaintiff's employment was adversely affected by his requests for leave.
> iv. Count IV: FMLA Retaliation – Plaintiff was terminated based upon his attempts to invoke his rights under the FMLA.

Doc. 144 at 12. Plaintiff's briefing discusses two additional purported claims—one for failure to accommodate and one for FMLA interference. But these two claims are not delineated in the pretrial order. The pretrial order completely omits any reference to a disability accommodation or interference with FMLA leave. These are distinct claims that Plaintiff should have identified if he wanted to pursue them.

The pretrial order controls the proceedings. *See Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1220 (10th Cir. 2000). Courts have discretion whether to exclude issues and claims not included in the pretrial order. *Hullman v. Bd. of Trs. of Pratt Cmty. Coll.*, 950 F.2d 665, 667 (10th Cir. 1991). "A plaintiff cannot escape the binding effect of the pretrial order by raising new issues in a response to the defendant's motion for summary judgment." *Id.* Any "claims, issues, defenses, or theories of damages not included in the pretrial order are waived even if they appeared in the complaint." *Wilson v. Muckala*, 303 F.3d 1207, 1215 (10th Cir. 2002).

Judges in the District of Kansas have repeatedly emphasized the importance of the pretrial order. *See, e.g.*, *Moral v. Hagen*, 2013 WL 1660484, at *7-8 (D. Kan. 2013). The Court utilizes the pretrial order to "immobilize the target" for trial. *Id.*; *see also Fid. & Deposit Co. of Md. v. Hartford Cas. Ins. Co.*, 189 F. Supp. 2d 1212, 1222 (D. Kan. 2002). And the District of Kansas pretrial-order form reminds litigants of the form's importance. It states: "It's essential that each party's factual contentions, legal claims, and defenses be clearly stated." *Pretrial Order Form*, D. Kan., 1 (Dec. 29, 2022), https://ksd.uscourts.gov/civil-forms. Courts rely on the pretrial order heavily to prepare for the final stages of a case.

The Court's review of the dispositive motions at issue was complicated by the differences between the pretrial order and Plaintiff's briefing. Plaintiff may view the Court's emphasis on the verbiage of the pretrial order as overly technical and inflexible. But the pretrial order serves a

significant purpose for the Court and opposing counsel. The form must clearly define the bounds of the claims at issue; otherwise, its value is severely diminished.

The Court recognizes it has discretion whether to construe the pretrial order liberally and broadly. And it ordinarily should. *See Koch*, 203 F.3d at 1220-21. But doing so here would serve injustice to Defendants, who relied on Plaintiff's claims as set forth in the pretrial order to formulate their briefing. Plaintiff identified four claims and gave a brief description for each of them. He also detailed his factual contentions. But nothing in the pretrial order (even liberally construed) notified Defendants or the Court that he meant to include an ADA failure-to-accommodate claim or an FMLA interference claim.

The Court limits the scope of Plaintiff's claims to the four claims in the pretrial order (which, in actuality, are only three claims because Plaintiff's "FMLA enforcement" claim is merely another way to allege that Wesley retaliated against him for requesting and taking leave).[6]

### B.    Rules Governing Briefing

The second matter relates to what facts are considered uncontroverted. Plaintiff's response brief to Defendants' summary-judgment motion does not comply with the federal or local rules. Plaintiff did not properly respond to Defendants' statement of facts as required by Fed. R. Civ. P. 56(c) and D. Kan. Rule 56.1(b)(1). Relatedly, he did not set out separately numbered additional material facts and support them as required by Fed. R. Civ. P. 56(c) and D. Kan. Rule 56.1(b)(2).

---

[6] It would not matter if the Court addressed Plaintiff's two additional purported claims on the merits. A claim for failure to accommodate requires that a plaintiff requested a "plausibly reasonable accommodation." *Punt v. Kelly Servs.*, 862 F.3d 1040, 1050 (10th Cir. 2017). Plaintiff has presented <u>no</u> evidence suggesting that he requested an accommodation at all. A claim for FMLA interference requires that the employer took an adverse action that interfered with the employee's right to take FMLA leave. *Sabourin v. Univ. of Utah*, 676 F.3d 950, 958 (10th Cir. 2012). But Plaintiff admitted in his deposition that he was not denied leave and received all the FMLA leave he requested. Doc. 156-1 at 17. He therefore is missing at least one element of an interference claim. *Valdez v. McGill*, 462 F. App'x 814, 820 (10th Cir. 2012) ("[The defendant] provided him with the leave to which he was (or may have been) entitled. Thus, there was no interference or retaliation with [the plaintiff's] requesting or taking of FMLA leave."). The summary-judgment outcome of these claims would be the same, regardless of whether the Court considered their merits.

Plaintiff's pro se status does not excuse his noncompliance, especially because Defendants complied with D. Kan. Rule 56.1(f) and sent Plaintiff the required notice for motions for summary judgment. Doc. 159. Thus, the Court deems Defendants' facts admitted and disregards Plaintiff's factual contentions (unless the factual contention is a stipulated fact in the pretrial order). *Canady v. Gen. Motors Corp.*, 368 F. Supp. 2d 1151, 1155 (D. Kan. 2004). On the properly supported record that is not genuinely disputed, Plaintiff fails to show a triable issue of fact for a jury to resolve (entitling Defendants to summary judgment) and fails to show that no reasonable jury could find for Defendants (warranting denial of his motion).

Plaintiff tried to correct this omission in his reply brief to his own summary-judgment motion. He reattached many exhibits to his reply brief and attached new ones. He also set forth a section titled "Concise Statement of Facts," consisting of a numbered list of facts with citations. Doc. 171 at 2-9. The problem with Plaintiff's effort is it comes too late. The reply brief is not the time for identifying a numbered list of uncontroverted facts. This would allow parties to sandbag, saving their critical evidence until after the opposing party has shown its hand. This turns the briefing procedure on its head. *See Autotech Techs. Ltd. P'ship v. Automationdirect.com, Inc.*, 235 F.R.D. 435, 437 (N.D. Ill. 2006) (observing that "[l]oading-up on a reply brief effectively results in a one-sided presentation, which is hopelessly inconsistent with the very premise on which the adversary system is based," is "unfair to one's opponent," and "adversely affects the accuracy of the judicial process, which depends on comprehensive presentations by both sides"). The Court does not consider the new evidence cited with particularity in Plaintiff's reply brief.[7]

---

[7] Even if the Court were to consider Plaintiff's evidence cited with particularity, it does not change the outcome. Much of new evidence relates to Plaintiff's contention that Clark terminated his employment on May 14. Plaintiff's argument on this issue is somewhat confusing. Wesley presents evidence that Plaintiff's termination date was July 15, 2021. Plaintiff even cites July 15 as his termination date in one place. Doc. 157 at 18 ("Plaintiff was terminated on July 15, 2021, for alleged job abandonment . . . ."). But elsewhere, Plaintiff argues that Clark actually terminated him on May 14, when he did not attend a meeting with her. But Plaintiff's only evidence supporting this termination date is an unemployment appeals decision that concluded Plaintiff was terminated on May 14. Wesley did not

### C. Appropriateness of Surreply

The third matter is Plaintiff's request for leave to file a surreply to Defendants' reply brief to their summary-judgment motion. Doc. 172. Plaintiff claims Defendants raise new issues in their reply brief to their own summary-judgment motion. But Plaintiff did not attach a proposed surreply to his motion, which is required by local rule. D. Kan. R. 15.1. Even if the Court were to consider Plaintiff's deficient filing, the Court would still deny Plaintiff's motion on the merits. This District's local rules generally "do not provide for the filing of surreplies," but leave to file a surreply may be appropriate "where a movant improperly raises new arguments in a reply." *McShares, Inc. v. Barry*, 979 F. Supp. 1338, 1341 (D. Kan. 1997) (internal quotations omitted). The Court carefully analyzed Defendants' reply brief. Defendants did not improperly raise new issues or argument in it. Defendants' arguments are in direct response to matters raised and briefed by Plaintiff. There is no justification to allow a surreply. The Court decides the motions on the briefing before it.

## IV. ANALYSIS

Plaintiff brings four claims, but the Court analyzes them as three claims requiring two different analyses: (1) disability discrimination based on harassment (hostile work environment) and (2) disability and FMLA retaliation.[8] No reasonable jury could find for Plaintiff on these

---

appear for the unemployment appeal hearing, which was held September 1, 2021. The May 14 date was therefore based on information Plaintiff himself gave to the Kansas Department of Labor. It does not create a genuine issue of material fact about the date Plaintiff was terminated. Neither would an earlier termination date change the outcome here. Plaintiff still lacks evidence suggesting that his termination was because of his leave requests or disability.

[8] Plaintiff names both an FMLA retaliation count and an FMLA enforcement count in the pretrial order. It seems these counts are essentially the same: Plaintiff claims that Wesley mistreated him and terminated his employment because he requested FMLA leave. To the extent that Plaintiff attempts to pursue a claim for FMLA interference via his "FMLA enforcement" claim, such effort is futile. Plaintiff admits he was granted all leave he requested. There is nothing in the record suggesting that Welsey provided a powerful disincentive for taking leave. *See Howard v. Millard Refrigerated Servs., Inc.*, 505 F. Supp. 2d 867, 881-82 (D. Kan. 2007). As the Court already noted, this precludes an interference claim.

claims, primarily because he has presented no evidence that his anxiety disorder or leave requests were the reason he suffered any mistreatment. Instead, it seems that the root of Plaintiff's problems was his invention of a sprinkler head cleaner, which led to his challenges in the workplace and exacerbated his pre-existing anxiety.

### A.   Disability Discrimination Based on Harassment

Plaintiff claims that he was subjected to harassment, or a hostile work environment, in violation of the Americans with Disabilities Act ("ADA").[9] The Court briefly discusses the requirements for a hostile-work-environment claim and why no reasonable jury could find that Plaintiff has established it.

A hostile work environment exists where a plaintiff (1) was discriminated against because of his disability, and (2) the discrimination was sufficiently severe or pervasive that it altered the terms or conditions of employment. *Throupe v. Univ. of Denver*, 988 F.3d 1243, 1251 (10th Cir. 2021) (outlining the elements for a sexual harassment claim). A series of separate acts can collectively constitute a hostile work environment. *Id.*

A hostile work environment claim requires "facts sufficient to show that the work environment 'is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Brown v. LaFerry's LP Gas Co.*, 708 F. App'x 518, 520 (10th Cir. 2017) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). There must be facts showing that the work environment is both subjectively and objectively hostile. *Id*. "[Run-of-the-mill] boorish, juvenile, or annoying behavior" is not sufficient, nor are a few isolated incidents. *Throupe*, 988

---

[9] The governing law is now the ADA Amendments Act of 2008 ("ADAAA"). The Court applies the amended law and regulations. But the Court continues to use the term "ADA" for ease of reference.

F.3d at 1252 (internal quotation and citation omitted). Where "none of the acts [a plaintiff] complains of, either considered alone or in combination, can be said to have altered the conditions of employment such that the atmosphere was abusive . . . . dismissal for failure to state claim is proper." *Chand v. Braithwaite*, 2020 WL 9209284, at *2 (D.S.C. 2020). "[E]ven incidents that would objectively give rise to bruised or wounded feelings will not on that account satisfy the severe or pervasive standard. Some rolling with the punches is a fact of workplace life." *Morris v. City of Colo. Springs*, 666 F.3d 654, 664 (10th Cir. 2012) (quoting *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008)).

The first problem with Plaintiff's harassment/hostile work environment claim is the causation element. Plaintiff repeatedly argues that he shows a connection between his anxiety disorder (disability) and a hostile work environment because the harassment and hostile environment "exacerbated Plaintiff's disability." *See, e.g.*, Doc. 157 at 2, 7, 8, 13, 15, 16, 24, 26, 35, & 43. The problem with Plaintiff's connection is it's backwards. A claim for a hostile work environment under the ADA must involve discrimination <u>because of the disability</u>. Plaintiff essentially argues disability <u>because of the discrimination</u>. Stated differently, Plaintiff argues that his disability is the damage he suffered because of discriminatory conduct. But not all discrimination is illegal under the ADA. The discrimination must be based on the disability. *See Austin v. Vilsack*, 2024 WL 4436599, at *3 (D. Kan. 2024) (noting that instances of harassment must be tied to the plaintiff's claim); *Melin v. Verizon Bus., Inc.*, 2014 WL 978813, at *4 (D. Kan. 2014) (noting that a "claim for a hostile working environment must ultimately relate back to his alleged disability).

But even if Plaintiff could get around the causation issue, he points to no evidence showing that the work environment was both subjectively and objectively hostile. At most, Plaintiff cites a

few isolated incidents that he complained about to management. He claims that he was told he would be recognized as a Facility All-Star because of his invention to clean sprinkler heads. But "shortly after this recognition, Plaintiff began experiencing harassment and intimidation in the workplace." Doc. 157 at 6. Plaintiff reported false claims of ownership of his invention and escalated his complaints, but Wesley failed to address Plaintiff's reports of harassment. *Id.* at 6-7. Plaintiff claims that Wesley's failure to take corrective action created a hostile working environment. *Id.* at 7. And Plaintiff claims that someone tampered with his personal belongings. These allegations fall short of conduct so pervasive or severe as to alter employment conditions. Even accepting that it impacted Plaintiff such that he needed to take medical leave, that does not automatically mean the conduct satisfies the standard of an objectively hostile working environment. Plaintiff may have been frustrated with management's reaction to his complaints. And he may have been distressed that others were trying to take credit for his invention. But he has presented no evidence rising to the level of an objectively and subjectively abusive working environment. No reasonable jury could find for Plaintiff on his disability harassment claim.

      **B.**    **Retaliation (Disability-Based and FMLA-Based)**

Plaintiff claims that his treatment and discharge were retaliatory based on his disability (anxiety disorder) and requests for FMLA leave. The Court addresses Plaintiff's disability- and FMLA-based retaliation claims together because the evidence is essentially the same for both. More precisely, the lack of evidence is the same for both. There is no evidence from which a reasonable jury could find that Plaintiff's treatment or termination was retaliatory because of his disability or FMLA leave.

Any evidence Plaintiff has in support of his retaliation claims is circumstantial. The Court therefore applies the *McDonnell Douglas*[10] standard to them. The *McDonnell Douglas* framework has three steps. First, a plaintiff must make a prima facie case. *Barlow v. C.R. England, Inc.*, 703 F.3d 497, 505 (10th Cir. 2012). Second, the burden shifts to the defendant to provide a legitimate, non-discriminatory reason for its action. *Id*. Third, the burden shifts back to the plaintiff to show that the "legitimate" and "non-discriminatory" reasons the defendant offered were pretext for unlawful discrimination. *Id*. "[P]retext is shown by demonstrating such weaknesses, implausibilities, inconsistencies, and incoherencies in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted nondiscriminatory reasons." *Swackhammer v. Sprint/United Mgmt. Co.*, 493 F.3d 1160, 1167 (10th Cir. 2007) (citation omitted). Typical methods are "direct evidence that the defendant's stated reason for the adverse employment action was false," and evidence of differential treatment from "other similarly situated employees who violated work rules of comparable seriousness." *Id*. at 1167-68 (citation omitted).

Plaintiff fails to establish a prima facie case for purposes of summary judgment. And even if he had, Wesley presents a legitimate, non-discriminatory reason for its actions. Plaintiff fails to establish a genuine issue of material fact whether Wesley's explanation is pretext for retaliatory conduct.

### 1. Prima Facie Case.

To establish a prima facie case of ADA or FMLA retaliation, a plaintiff must show: (1) he engaged in a protected activity; (2) he was subjected to an employment action that a reasonable employee would find materially adverse; and (3) a causal connection between the two. *Edmonds-*

---

[10] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

*Radford v. Sw. Airlines Co.*, 17 F.4th 975, 994 (10th Cir. 2021) (disability); *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1171 (10th Cir. 2006) (FMLA).

Both Plaintiff's retaliation claims suffer from the same causation problem discussed with his harassment claim. In addition to the reasons previously stated, Plaintiff also fails to show causation between his FMLA leave requests and his treatment or termination.

Plaintiff's termination constitutes an employment action that a reasonable employee would find materially adverse. But Clark waited a total of twelve weeks after his leave was first approved to terminate his employment. She then gave him one last chance to contact her. Plaintiff did not. For the last six weeks, Plaintiff had remained out of the office without having updated leave approval. No reasonable juror could conclude based on this evidence that Plaintiff was terminated for any reason other than job abandonment. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 878 (10th Cir. 2004) ("[Plaintiff's] request for an FMLA leave does not shelter [him] from the obligation, which is the same as that of any other [company] employee, to comply with [company] employment policies, including its absence policy.").

Plaintiff's "treatment" suffers another malady (in addition to lack of causation): no reasonable jury could find that it constituted an employment action that a reasonable employee would find materially adverse. Plaintiff expresses frustration that Clark contacted him during his leave. But she contacted him when his approved leave was exhausted and she was unaware of new paperwork being submitted. She sent three emails. And Plaintiff didn't respond to two of them. No reasonable jury could find three emails to be materially adverse. Plaintiff also complains that management ignored his complaints about his invention being stolen and that someone tampered with his personal items. These actions happened before Plaintiff even took leave. But even if they

14

continued during leave, they do not reach the level of materially adverse either alone or in combination. The Court does not address Plaintiff's "treatment" further.

Plaintiff's disability retaliation claim also suffers from another problem: Plaintiff did not engage in a protected activity. There is no evidence the Plaintiff ever complained about disability discrimination. And he did not request an accommodation under the ADA. An inadequate (or non-existent) request for an accommodation does not constitute protected activity. *Foster v. Mt. Coal Co., LLC*, 830 F.3d 1178, 1188 (10th Cir. 2016).

Plaintiff requested medical leave through Wesley's third-party administrator. But TAFW did not share the reason with Wesley. And TAFW advised Plaintiff in a letter that if he "would like to discuss an accommodation in addition to this request for leave, please contact your facility's Human Resource department as soon as possible." Plaintiff did not. None of Plaintiff's actions constituted protected activity under the ADA. Without protected activity (or causation), Plaintiff cannot establish a prima facie case of retaliation.

### 2. Legitimate, Non-Discriminatory Reason for Termination.

The second part of the analysis requires that the employer produce evidence of a legitimate, non-discriminatory reason for the plaintiff's termination (or other adverse action). *McDonnell Douglas*, 411 U.S. at 802. This burden is one of production, not persuasion; it involves no credibility assessment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000). Wesley meets this burden. Clark explained that she terminated Plaintiff's employment because he did not return to work after his protected leave was exhausted. In other words, he abandoned his job. This satisfies Wesley's burden.

### 3. Pretext.

The third part of the analysis shifts the burden back to the plaintiff, who must demonstrate that the employer's proffered reason is pretext for discriminatory or retaliatory motive. *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1170 (10th Cir. 2006). In analyzing a plaintiff's claim of pretext, courts examine the facts as they appear to the individual making the termination decision; the court's role is not to "second guess" the employer's business judgment. *Dewitt v. Sw. Bell Tel. Co.*, 845 F.3d 1299, 1307 (10th Cir. 2017); *see Young v. Dillon Cos.*, 468 F.3d 1243, 1250 (10th Cir. 2006) ("[O]ur role is to prevent intentional discriminatory . . . practices, not to act as a 'super personnel department,' second guessing employers' honestly held (even if erroneous) business judgments."). Nor is the court's role to ask whether the decision was wise, fair, or correct. *Dewitt*, 845 F.3d at 1307. Rather, the court must determine whether the employer honestly believed the legitimate, non-discriminatory or non-retaliatory reason it gave for its conduct and acted in good faith on that belief. *Id*. Mere conjecture that the employer's explanation is pretext is not enough to justify denial of summary judgment. *Id*.

All Plaintiff has is timing. He was terminated just after his protected leave ended. But temporal proximity alone is not sufficient to defeat summary judgment. *See Pinkerton v. Colo. Dep't of Transp.*, 563 F.3d 1052, 1066 (10th Cir. 2009); *Peterson v. Exide Techs.*, 2011 WL 677150, at *8 (D. Kan. 2011). Plaintiff must have circumstantial evidence of bad motive to survive summary judgment. Plaintiff has not presented this evidence to the Court.

There is a complete dearth of evidence from which a reasonable jury could conclude that Plaintiff was treated poorly or terminated in retaliation for requesting time off for his disability or for turning in FMLA paperwork. The Court grants summary judgment on these claims.

## V.   CONCLUSION

The bulk of this Memorandum and Order analyzes Defendants' motion. The Court has separately viewed Plaintiff's motion in the light most favorable to the non-moving party, as the Court must. The Court gave Plaintiff considerable leeway throughout the briefing of these motions. *See, e.g.*, Docs. 155 (granting additional pages for briefing at Plaintiff's request); 168 (granting Plaintiff's motion to reconsider the Court's decision to strike Plaintiff's improper amendment of a response and allowing said amendment to stand). And Magistrate Judge Severson gave Plaintiff's various requests for relief during pretrial proceedings thoughtful and fair consideration. Throughout the case, both the undersigned and Judge Severson have held Plaintiff's filings to a less stringent standard than those drafted by lawyers. The Court has now reviewed the summary judgment record with the same liberal construction for Plaintiff. But in the end, Plaintiff fails to show a genuine issue of material fact remains for trial, warranting summary judgment in Defendants' favor. And Plaintiff fails to show that no reasonable jury could find for Defendants, warranting denial of his motion.

THE COURT THEREFORE ORDERS that Defendants' motion for summary judgment (Doc. 156) is granted and Plaintiff's cross-motion (Doc. 157) is denied. Plaintiff's time to appeal (thirty days) begins to run on the day judgment is entered. Fed. R. App. P. 4. The case is closed.

THE COURT FURTHER ORDERS that Plaintiff's motion for leave to file a surreply (Doc. 172) is denied.

IT IS SO ORDERED.

Dated: May 19, 2025                    /s/ *Holly L. Teeter*
                                        HOLLY L. TEETER
                                        UNITED STATES DISTRICT JUDGE